# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION



| | |
|---|---|
| DONALD SHAW, | ) |
| Plaintiff, | ) ) ) ) No. 03 C 6748 |
| vs. | ) ) Judge Joan H. Lefkow |
| Mayor SUSAN KLINKHAMER, LARRY MAHOLLAND, and THE CITY OF ST. CHARLES, ILLINOIS | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Donald Shaw ("Shaw") has moved for reconsideration of this court's December 22, 2004 Memorandum Opinion and Order granting the motion for summary judgment of defendants, City of St. Charles, Illinois ("St. Charles"), Mayor Susan Klinkhamer ("Klinkhamer"), and City Administrator Larry Maholland ("Maholland"). In his complaint, Shaw alleged that defendants conspired to violate and violated Shaw's constitutional rights by terminating him from his position as chief of police of St. Charles in retaliation for exercising his First Amendment rights. The court granted summary judgment in favor of defendants on Shaw's 42 U.S.C. § 1983 claims of First Amendment retaliation, denial of equal protection, and conspiracy, as well as Shaw's state law claim for indemnification.[1]

Shaw raises numerous arguments in asserting that the court erred in granting summary judgment for the defendants by relying on unsupported factual and legal conclusions and misapprehending certain facts at the core of his claims. In particular, Shaw argues that the court

---

[1] Shaw conceded that defendants were entitled to summary judgment on his Due Process claim and state law claims of retaliatory discharge and respondeat superior.

erred in finding that Maholland reached the decision to remove Shaw in December 2002. Shaw further argues that his affidavit regarding Klinkhamer's demand that he cease the Courser investigation was a proper part of the record that the court should have considered. Shaw also contends that the court failed to credit the evidence in the record refuting defendants' claims regarding Shaw's alleged poor performance. Because the court finds that it erred in granting summary judgment in favor of defendants, the court grants Shaw's motion to reconsider and vacates the December 22, 2004 Memorandum Opinion and Order to the extent that summary judgment was granted in favor of defendants.

I.  **FACTUAL BACKGROUND**

The court assumes that the reader is familiar with the court's earlier opinion but will provide a brief recap of the pertinent background information. Shaw was appointed to chief of police of St. Charles, Illinois in 1991 by Klinkhamer, St. Charles' mayor. As chief of police, Shaw served under Klinkhamer and the city administrator, Maholland. Pursuant to an ordinance of St. Charles, the mayor directly appoints the chief of police for annual terms, and the city council confirms the appointment. The city council has the authority to confirm or deny the mayor's recommended appointments. On February 18, 2003, Maholland informed Shaw that he would not recommend his reappointment as chief of police.

On July 23, 2002, Dean Courser ("Courser"), a major donor to Klinkhamer's campaigns, was stopped by a St. Charles for speeding failing to have a front license plate. After learning of the citation, Klinkhamer contacted Shaw, telling him that she "didn't like it" and that she wanted him to "pull it." Shaw refused to interfere with the prosecution of the Courser citation, telephoning Maholland to inform him of his conversation with Klinkhamer. Shaw also apprized Kathy Livernois

2

("Livernois"), director of the St. Charles Department of Human Resources, of his conversation with Klinkhamer on or about January 8, 2003.

Klinkhamer also informed Shaw that she was displeased with a liquor compliance investigation involving McNally's Irish Pub ("McNally's"), whose officers and part-owners had given Klinkhamer's re-election campaign its largest cash donation in 2001. After McNally's received its punishment, Shaw notified Maholland of what he perceived to be "extreme favoritism" shown by Klinkhamer to McNally's Irish Pub.

The Courser citation was subsequently *nolle prossed* without the permission of the citation's issuing police officer in what Shaw considered a suspicious manner. On January 8, 2003, Shaw launched an investigation into the disposition of the citation by sending a letter to Meg Gorecki, the Kane County State's Attorney. Shaw also asked Dennis Harrison, an attorney, to investigate the disposition of the Courser citation on January 29, 2003. That same day, Shaw initiated an internal investigation into the disposition of the Courser citation. In addition, Shaw sent a letter to Major Joseph Gryz of the Illinois State Police ("ISP") on February 3, 2003 in which he requested that the ISP conduct a criminal investigation into the allegation that an Illinois traffic citation was dismissed without the consent of the issuing police officer. Shaw later spoke with Major Gryz about the dismissal of the citation, informing Major Gryz that he suspected that the dismissal involved political influence and Klinkhamer's office.

As the city administrator, Maholland made recommendations to the mayor and city council about appointments and reappointments of city personnel. On February 17, 2003, Maholland informed the St. Charles City Council at an executive session that Shaw would not be reappointed as police chief because of Shaw's poor performance, his failure to complete requested programs on

a timely basis, and his failure to meet expectations. Klinkhamer concurred with Maholland's recommendation. At the same meeting, Maholland informed the aldermen that he would recommend the reappointment of Ellen Divita ("Divita"), the head of the St. Charles Department of Economic Development, despite concerns that were raised about Divita's performance. The following day, February 18, 2003, Maholland informed Shaw that Shaw would not be recommended for reappointment as chief of police. In May of 2003, Shaw was not reappointed as chief of police.

## II. MOTION TO RECONSIDER STANDARD

A motion for reconsideration serves the limited function to correct manifest errors of law or fact or to present newly discovered evidence, and whether to grant such a motion is within the discretion of the court. *Caisse Nationale Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269-70 (7th Cir. 1996). The problems warranting such a grant are rare. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation omitted). The motion also serves a valuable function where the court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (quotation omitted).

## III. DISCUSSION

### A. First Amendment Retaliation

#### 1. The Timing of the Decision to Remove Shaw as Chief of Police

Shaw argues that the court's finding that the decision to remove Shaw was made by Maholland in December 2002 is not supported by the record and improperly eviscerated nearly every incident of First Amendment speech relevant to this litigation. Relying on the deposition testimony

4

of Livernois, the court had found that Maholland and Livernois had discussed how to handle Maholland's recent decision not recommend the reappointment of Shaw as chief of police in December of 2002. (Op. at 11). Livernois thought about the issue through the holidays and then spoke again with Maholland, agreeing with his decision to not recommend the reappointment of Shaw. In his response to defendants' Local Rule 56.1 Statement of Material Facts, Shaw denied that the defendants' cited reference contained evidence of the date. In reviewing the deposition, the court found that the deposition testimony revealed that Maholland and Livernois spoke before the holidays, which the court understood to refer to Christmas and New Year's, and then spoke again following the holidays.[2] The court found that the testimony fairly referred to December 2002.

Shaw contends, however, that an issue of fact exists regarding when the decision to recommend his non-reappointment was made. In support thereof, Shaw cites to the deposition of Maholland, which indicates that Maholland did not make the decision to recommend Shaw's removal until after he had learned that Shaw was asking to investigate the disposition of the Courser citation. Shaw also points to the recently produced cover page for the Courser citation investigation

---

[2] In reviewing the deposition of Livernois, the court referred to a page of Livernois' deposition that defendants failed to cite within their statement of material facts but that they cited to directly within the text of their memorandum of law. Shaw argues that it is unfair for the court to have considered such testimony because the Local Rules of the Northern District of Illinois mandate that the court ignore supporting documents that are submitted with a motion for summary judgment but that are not cited in the statement of material facts. *See Malec v. Sanford*, 191 F.R.D. 581, 583, 586 (N..D. Ill. 2000). Had defendants properly cited to the document in their statement of material facts, Shaw asserts that he would have raised a hearsay objection.

The court recognizes that Shaw was disadvantaged by the court's reliance on evidence not properly cited by defendants; however, it is also unfair for either party to expect the court "to spend hours cross-referencing every direct record citation improperly contained in the [parties'] summary judgment brief[s] with those provided in their L.R. 56.1 Statement of Facts." (Pl. Reply at 10, n. 4). This is particularly true where defendants submitted a L.R. 56.1 statement that included 236 material facts, while plaintiff submitted 193 additional material facts. In any event, the court considered the effect of a different sequence of timing for Maholland's decision against recommending Shaw's appointment, *see* Memorandum Opinion at P. 20. The court's decision to grant defendants' motion for summary judgment ultimately hinged on Shaw's failure to present other evidence that gives reason to doubt the truthfulness of Maholland's stated reasons for not recommending Shaw's reappointment, not the court's finding that Maholland decided against recommending Shaw's appointment in December 2002.

complaint register. The cover page shows that Shaw made a complaint against an unknown St. Charles Police Department Officer regarding the disposition of the Courser traffic citation on January 29, 2003.[3] In other words, it would have been impossible for Maholland to have reached the decision to not recommend Shaw's reappointment in December 2002 and that the earliest that Maholland could have made the decision was January 29, 2003. Unsurprisingly, defendants respond that the court correctly determined that Maholland made the decision to not reappoint Shaw in December 2002 based on the testimony of Livernois.

Upon further review of the testimony of Livernois and Maholland, it is apparent that an issue of fact exists as to when Maholland reached his decision not to recommend the appointment of Shaw as chief of police. Shaw is correct in that Livernois' testimony speculates as to when Maholland reached the decision. Maholland's testimony, by contrast, clearly shows that he made his decision not to recommend Shaw for reappointment after he had learned that Shaw was investigating the ticket-fixing incident. Accordingly, the court finds that it erred in deciding that Maholland reached the decision not to recommend Shaw's reappointment in December 2002. Because Maholland could not have reached his decision before January 29, 2003, it is fair to say that the February 17, 2003 announcement followed soon after he had become aware of the investigation. Thus, an inference

---

[3] According to Shaw, defendants did not produce a copy of this document until late November 2004, after both discovery and summary judgment briefing had been concluded. Defendants argue that this document does not establish anything new and that the court correctly determined in its ruling that the Courser ticket investigation was commenced on January 29, 2003. Defendants do not explain the delay in producing this document to Shaw and, instead, argue that Shaw knew or should have known that the document existed because it was completed by Shaw and remained under his control until at least September 2003.

Regardless of the reason for the delay, the cover page established more specifically than the Personnel Order on which the court relied in denying summary judgment that the complaint involved the Courser citation and Courser's alleged statements to the police officer issuing the citation. The cover page specifically mentioned "Klinkhamer," while the Personnel Order merely stated the citation and complaint number of Courser's citation without naming Courser. Thus, the cover page would have made it more readily apparent to both Klinkhamer and Maholland that Shaw had launched an investigation involving either Klinkhamer or her husband.

of retaliatory motive is permissible. *See Filipovic* v. *K&R Express Systems, Inc.*, 176 F.3d 390, 398-99 (7th Cir. 1999) ("Generally, a plaintiff may establish such a link through evidence that the [adverse employment action] took place on the heels of protected activity.") (citation omitted).

2. Pretext

As the court stated in its December 22, 2004 opinion, "Even if the court were to find the timing of Maholland's decision against recommending the reappointment of Shaw suspicious, Shaw still must present other evidence that gives reason to doubt the truthfulness of Maholland's stated reasons for not reappointing Shaw." Opinion at 20, citing *Pugh* v. *City of Attica*, 259 F.3d 619 at 629 (7th Cir. 2001). At summary judgment, the parties presented evidence regarding their respective views of Shaw's job performance. Defendants offered Shaw's 2002 performance evaluation, which included criticism of his decision-making skills, Maholland's negative views of Shaw's performance as chief of police, and the results of an employee survey and listen and learn sessions during which some police officers expressed concerns about the police department.

Shaw also presented evidence regarding his performance evaluation, which had been conducted nine months before Maholland notified him that he would not be reappointed. According to the evaluation, Shaw's overall performance exceeded expectations. Shaw also asserted that he was never informed that his performance was unsatisfactory. In addition, Shaw took issue with the number of times complaints were made during the Listen and Learn sessions. Shaw further noted Maholland's failure to document his concerns regarding Shaw's alleged deficiencies, the police department's high scores on many surveys that Maholland purportedly did not consider, the contradictions between Maholland's assertions regarding the Employee Survey results and their actual tabulations, and the limited support that the Listen and Learn surveys provided for

7

Maholland's claims regarding poor performance and low departmental morale.

In its December 22, 2004 opinion, the court explained that "[i]n the context of summary judgment, in order to reach a jury with a theory of First Amendment retaliation, plaintiff must show that a reasonable jury could conclude that defendants' stated legitimate reason for his termination is a lie." Opinion at 20, citing *Little v. Ill. Dep't of Revenue*, 369 F.3d 1007 at 1016 (7th Cir. 2004), citing *Vukadinovich v. Bd. of Sch. Trs.*, 278 F.3d 693, 699 (7th Cir. 2002). In other words, the question was not whether defendants *could have decided against reappointing* Shaw because of his job performance but whether Shaw was in fact not reappointed because of his job performance. *See Gazarkiewicz v. Town of Kingsford Heights*, 359 F.3d 933, 948 (7th Cir. 2004). The court incorrectly adopted defendants' stated reasons as the true reasons for the decision not to reappoint Shaw rather than giving weight to the contradictory evidence presented by Shaw as to his job performance and drawing all reasonable inferences therefrom in Shaw's favor. The evidence presented by Shaw with regard to pretext was sufficiently disputed that it was inappropriate for the court to grant summary judgment because a reasonable jury could conclude that Shaw was not reappointed because of his speech rather than because of his job performance.[4] Accordingly, the court finds that a genuine issue of material fact exists with regard to Shaw's claim of First Amendment retaliation.

**B.      Equal Protection Claim**

Shaw also contends that the preceding discussion is relevant to his equal protection and conspiracy claims. He argues that he need not demonstrate that he is similarly situated to other individuals in order to succeed on a "class of one" equal protection claim. As the court stated in its

---

[4]Since the errors addressed were a sufficient basis on which to grant Shaw's motion to reconsider, the court finds it unnecessary to address Shaw's remaining arguments with regard to his claim of First Amendment retaliation.

opinion, a plaintiff may establish a *prima facie* case of a class of one denial of equal protection "by presenting evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Tuffendsam v. Dearborn Cty. Bd. of Health*, 385 F.3d 1124 at 1127 (7th Cir. 2004), citing *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000). A plaintiff also may establish a *prima facie* class of one equal protection claim, by demonstrating "that the government is treating unequally those individuals who are prima facie identical in all relevant respects . . . ." *Albiero v. City of Kankakee*, 246 F.3d 927 at 932 (7th Cir. 2001), citing *Indiana School Teachers Ass'n v. Board of Sch. Comm'rs*, 101 F.3d 1179, 1181-82 (7th Cir. 1996).

Here, Shaw has offered evidence establishing a *prima facie* case that he was not reappointed as chief of police because of the vindictiveness or illegitimate animosity of defendants. Shaw launched an investigation into the Courser citation, an incident in which Klinkhamer's name was invoked, either as it related to her or her husband. Shaw also commented to Maholland regarding the extreme favoritism shown to McNally's. Despite the fact that Shaw's performance had exceeded expectations only nine months prior to the decision not to reappoint him, he was not reappointed. With the exception of Shaw, Maholland has always recommended the reappointment of department heads. Klinkhamer also informed Shaw that she "would take [him] on" in the event he was considering litigation. Opinion at 12. A reasonable jury may conclude that the decision not to reappoint Shaw was the result of animosity felt by Klinkhamer and Maholland toward Shaw as a result of his investigation and his speaking out against what Shaw thought considered to be corruption. This claim, like Shaw's First Amendment retaliation claim, presents a close case that requires the evaluation of credibility, a determination best suited to the deliberations of a jury. The

9

court, therefore, reverses summary judgment granted in favor of defendants as to Shaw's claim of denial of equal protection.

C.     **Conspiracy Claim**

In granting defendants' motion for summary judgment, the court had not considered the merits of either Shaw's or defendants' arguments regarding Shaw's claim of conspiracy because of its prior analysis granting summary judgment on Shaw's claims of First Amendment retaliation and denial of equal protection. Having realized that it erred in granting summary judgment, the court now takes the opportunity to address the parties' arguments.

In order to state a conspiracy claim under § 1983, a plaintiff must show "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivation of those rights in the form of over acts in the furtherance of the agreement." *Scherer v. Balkema*, 840 F.2d 437 at 442 (7th Cir. 1988), *cert. denied* 486 U.S. 1043, 100 L. Ed. 2d 620, 108 S. Ct. 2035 (1988). Initially, defendants contended that the only allegations of conspiracy were contained in Shaw's deposition testimony in which he more or less stated that defendants conspired with a newspaper columnist to defame him. Shaw argued that the defendants' narrow portrayal of his conspiracy claim ignored the larger issue: the failure of defendants to reappoint him in retaliation his having exercised his First Amendment rights. Defendants responded by asserting the intracorporate conspiracy doctrine.

"The intracorporate conspiracy doctrine precludes members of the same entity from becoming 'conspirators' when they act within the scope of their authority." *Fairley v. Andrews*, 300 F. Supp. 2d 660 at 668 (N.D. Ill. 2004), citing *Payton v. Rush-Presbyterian St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999). The Seventh Circuit also has applied this doctrine to § 1985 actions

10

brought against employees of the same government entity, *see Wright v. Ill. Dep't of Children and Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994), but has not yet reached the issue of whether the doctrine extends to § 1983 actions. Other courts within this district, however, have applied the doctrine in employment cases involving § 1983 claims against government employees or administrators. *See, e.g., Hobley v. Burge*, No. 03 C 3678, 2004 U.S. Dist. LEXIS 10228 (N.D. June 3, 2004); *Simonsen v. Board of Educ. of the City of Chicago*, No. 01 C 3081, 2002 U.S. Dist. LEXIS 2361 (N.D. Ill. Feb. 14, 2002).

The intracorporate conspiracy doctrine was established "to shield corporations and their employees from conspiracy liability for routine, collaborative business decisions that are later alleged to be discriminatory." *Id.*, quoting *Newsome v. James*, 2000 U.S. Dist. LEXIS 5678, No. 96 C 7680, 2000 WL 52847, at *15 (N.D. Ill. Apr. 26, 2000). The Seventh Circuit has clarified that the intracorporate conspiracy doctrine does not apply in egregious circumstances where employees "are shown to have been motivated solely by personal bias." *Hartman v. Board of Trustees of Community College Dist. No. 508*, 4 F.3d 465 at 470 (7th Cir. 1993).

Taking the facts in the light most favorable to Shaw, Maholland and Klinkhamer, employees of the same municipal government, violated Shaw's First Amendment rights by not reappointing Shaw in retaliation for Shaw's having launched an investigation into the resolution of the Courser traffic citation and having reported perceived acts of favoritism. Absent from this act of retaliation is evidence that both Maholland and Klinkhamer were acting *solely* for their own personal interest. Shaw has not identified any interest of Maholland that was furthered by the act of retaliation. While it may be inferred from the facts favorable to Shaw that Klinkhamer had a personal interest in maintaining her reputation and protecting herself and her husband from questions regarding their

11

ethics and performance as public officials, the evidence has not established that Klinkamer's decision not to reappoint Shaw was solely for personal reasons. Notably, Shaw never alleged in his complaint or argued in any of his briefs that he was retaliated against by Maholland and Klinkhamer solely because of their personal interests. Because Shaw failed to demonstrate that Maholland and Klinkhamer retaliated against Shaw only because of their personal biases or interests, the intracorporate conspiracy doctrine bars Shaw's claim of conspiracy.

## D.   Qualified Immunity

The court did not address the issue of qualified immunity in its opinion because it was unnecessary based on its decision granting summary judgment. Neither party raises the issue with regard to the motion to reconsider, but the court finds that it is necessary to respond briefly to the arguments raised by the parties in their summary judgment briefing. In their motion for summary judgment, defendants contended that they are entitled to qualified immunity on all of Shaw's claims because there was no applicable authority establishing that making three statements over a period of six months, which make no allegation of illegal or unethical conduct, would lead to liability. Shaw responded by arguing that defendants engaged in a successful campaign to remove him from his position as chief of police to punish him for engaging in protected expression on a matter of public concern. As the court discussed above, a genuine issue of material fact exists as to the true reason Shaw was not reappointed as chief of police. As such, whether defendants are entitled to qualified immunity cannot be decided on summary judgment. *See McGreal v. Ostrov*, 368 F.3d 657, 684 (7th Cir. 2004) (because sincerity of belief and true cause of police officer's suspension were at issue with regard to plaintiff's claim of First Amendment retaliation, qualified immunity could not be decided at summary judgment).

## IV. ORDER

For the reasons stated above, the court grants Shaw's motion to reconsider [#59] the court's December 22, 2004 Memorandum Opinion and Order granting defendants' motion for summary judgment. The court vacates the opinion to the extent that it granted summary judgment in favor of defendants with regard to Shaw's claims of First Amendment retaliation and denial of equal protection. The court sets this matter for a hearing on status on July 19, 2005.

Enter: *Joan H. Lefkow*
JOAN HUMPHREY LEFKOW
United States District Judge

Date: July 1, 2005